## PELICAN ICE CO., Limited, et al. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Fifth Circuit.
January 15, 1930.

No. 5554.

Edwin T. Merrick, Ralph J. Schwarz, and Morris B. Redmann, all of New Orleans, La., for petitioners.

C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., Sewall Key, and Helen R. Carloss, Sp. Assts. to the Atty. Gen., and Mabel Walker Willebrandt, Asst. Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., on the brief), for respondent.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is a petition for review of a decision of the United States Board of Tax Appeals upon proceedings for redetermination of deficiencies in taxes on income and excess profits for the years 1920 and 1921 of the Pelican Ice Company and the Pelican Cold-Storage & Warehouse Company. That decision, which is reported in 11 B. T. A. 75, held that the two corporations were not affiliated within the meaning of the Revenue Acts of 1918 and 1921, each of which in section 240 provides: "For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests." 40 Stat. 1082; 42 Stat. 260. If those corporations were so affiliated in business, then it is conceded that the additional taxes were erroneously assessed and are not due.

The ice company was incorporated in 1902 to engage in the manufacture and sale of ice, and with authority to operate one or more cold-storage warehouses. The cold-storage company was incorporated in 1904 to engage in the cold-storage and warehousing business. Each company was given by its charter the option to purchase from its stockholders at book value any stock that was for sale. Charles H. Behre organized both companies, and had been president of each from the date of its incorporation through the tax years in question, and during that period assumed the complete management and control of their affairs without consulting the other directors or stockholders. He borrowed money for the cold-storage company through the ice company, or from banks on his own personal indorsement. The plants of the two companies were connected by a bridge, and all of the refrigeration used by the cold-storage company was furnished by the ice company. Books of account were jointly kept, and there was but one bank account. Behre and the members of his family owned all the outstanding capital stock of the ice company in 1921, and all except 18 shares in 1920. There were outstanding, in 1920, 870 shares of stock of the cold-storage company, of which the ice company owned 430 shares, Behre and his family 152 shares, various customers 88 shares, and William Edenborn 200 shares. The outstanding stock was increased in 1921 to 1,000 shares, of which the ice company owned 541 shares, the 19 additional shares being held by several of its employees; otherwise the stock ownership remained the same as it had been in 1920.

It thus appears that the ice company, its employees, Behre and his family, held in 1920 67 per cent., in 1921 71 per cent., of the outstanding stock of the cold-storage company, and that these holdings would be increased to about 90 per cent. if the 200 shares held by Edenborn had not been issued. The issuance of stock to Edenborn occurred in this way. Edenborn let Behre have $20,000 to make up an initial payment of $25,000 upon the purchase price of a tract of land with the expectation of sharing in any profits which might accrue on a resale of the land. Edenborn and Behre were intimate friends. The purchase of the land was made in the name of the cold-storage company. Behre, instead of giving

his own personal obligation, caused 200 shares of stock of the cold-storage company to be issued to Edenborn as evidence of the latter's interest in the land. Edenborn accepted the stock, received one year's dividend on it, but did not attend any meetings of the stockholders, except one that was held in 1922, and took no part in the conduct of the company's business. At the meeting of the stockholders in 1922 a stock dividend of 400 per cent. was declared because of the purchase of the land, and this action resulted in an increase of Edenborn's stock to 1,000 shares. Afterward Edenborn's understanding of the entire transaction was made clear in a letter he wrote to Behre, in which he stated that he invested his money in the belief that the property could be resold at a profit in which he would be entitled to participate; that otherwise he was entitled to have Behre return the money he had invested with interest, and, upon that being done, he would have no interest in the profit or the property. Behre finally settled with Edenborn by returning to him $20,000, with interest at the legal rate.

The ice company did not own or control substantially all the stock of the cold-storage company, and therefore it cannot be said that the two corporations were affiliated because of the first subdivision (a) of § 240 of the Revenue Acts. The only question that remains is whether or not, within the meaning of the second subdivision of that section, substantially all the stock of the two corporations was owned or controlled in 1920 and 1921 by the same interests. If the evidence requires an affirmative answer, the corporations were affiliated, and consequently were entitled to make a consolidated return upon their joint income. A primary object of the statutory provision requiring corporations owned or controlled by the same interests to make a consolidated return was to prevent a single business enterprise, by splitting up its net profits and dividing them with its subsidiaries, from avoiding payment of the surtaxes imposed under the higher brackets of a graduated income tax law. But the rule of that statutory provision works both ways, and, where two corporations are affiliated, the losses of one are to be deducted from the profits of the other. Regulations of the Treasury Department are to the effect that the words "substantially all the stock" do not mean any particular percentage, but are to be construed according to the facts of a particular case; that the owning or controlling of 95 per cent. is sufficient to constitute affiliation, but, when the percentage is in excess of 50 and less than 95, a full disclosure of affiliations is required.

And it was early recognized by the Board of Tax Appeals that any particular percentage of ownership or control would be an unsafe guide. Hagerstown Shoe & Legging Co., 1 B. T. A. 666; Stanley Insulating Co., 2 B. T. A. 967. Behre and his family owned more than 95 per cent. of the ice company's stock. They also owned or controlled directly, or indirectly through their holdings in the ice company, 90 per cent. of the cold-storage company's stock, if the stock held by Edenborn be left out of the calculation. It clearly appears from the opinion of the Board of Tax Appeals that the corporations were held not to be affiliated because of the stock which Edenborn held in the cold-storage company. Behre's control of the affairs of both corporations is conceded, and is shown beyond dispute by the evidence.

His domination was as complete during the time Edenborn held his stock as it had been before. In our opinion, it is also true that the control of Behre and his family was as complete over the stock of the two corporations as was Behre's control of the affairs of each. Edenborn could not sell his stock to an outsider without the consent of Behre and his family. Moreover, as it appears to us, Edenborn held his stock as security for the amount he advanced upon the purchase price of the land.

He was not interested in the cold-storage company. Although he accepted dividends for one year, he did not require the payment of more than the amount he had advanced, notwithstanding the fact that at the time of his settlement with Behre 1,000 shares of stock stood in his name. The stock which he held was but an evidence of Behre's personal obligation to him. Our conclusion upon the undisputed facts is that substantially all the stock of the two corporations was held by the same interests.

The decision of the Board of Tax Appeals is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.